UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20106-Civ-WILLIAMS/TORRES

GERALDINE JARAMILLO,

    Plaintiff,

v.

MAOZ, INC., and MAOZ DRUSKIN,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Maoz, Inc.'s and Maoz Druskin's ("Defendants") partial motion for summary judgment on the issue of individual coverage as to Counts I and II and for the 2017 tax year as to Count IV [D.E. 47] of Geraldine Jaramillo's ("Plaintiff" or "Jaramillo") amended complaint. Plaintiff responded to Defendants' motion on December 30, 2020 [D.E. 51] to which Plaintiff replied on January 25, 2021 [D.E. 56].[1] The matter is therefore fully briefed and ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion for summary judgment should be **GRANTED.**

---

[1] The Honorable Judge Kathleen M. Williams referred the motion to the undersigned on December 3, 2020. [D.E. 48].

## *I.   FACTUAL BACKGROUND*

Defendants operated kiosks at several mall locations in South Florida that mostly sold sunglasses. [D.E. 47, Ex. 1; D.E. 51, Ex. 1]. Jaramillo worked at a few of the kiosks between 2017 and 2019. *Id.* Besides selling merchandise as a sales representative, Jaramillo worked as a store manager at one location. As manager, she made work schedules, supervised one other employee, implemented sales strategies, purchased supplies for the store at local big-box stores (i.e. cleaning and stationary supplies), and delivered the rent check to the mall representative. *Id.* For her sales training, she attended a sales convention in Colorado for a few days and learned that some of the merchandise she would sell in Florida came from New York and Colorado.

Over the course of her employment, Defendants allegedly failed to pay Jaramillo both minimum and overtime wages in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"). [D.E. 24, ¶¶ 10, 11]. Defendants, while paying Jaramillo, also allegedly issued her inaccurate W-2 Forms for years 2018 and 2019 to avoid paying payroll taxes in violation of 26 U.S.C. § 7434. *Id.* at ¶¶ 54-55. Jaramillo did not receive a W-2 Form from Defendants for year 2017. [D.E. 47, Ex. 1; D.E. 51, Ex. 1]. On October 17, 2019, Jaramillo suffered a work-related injury and subsequently requested that Defendants' file a worker's compensation claim. [D.E. 24, ¶¶ 26, 28]. According to Jaramillo, once Defendants realized Jaramillo had a viable worker's compensation claim, they terminated her employment. *Id.* at ¶¶ 30, 32.

On January 9, 2020, Plaintiff filed a complaint against Defendants. [D.E. 1]. On April 30, 2020, the Court granted Defendants' motion to dismiss the complaint and ordered Plaintiff to file an amended complaint within fourteen days. [D.E. 19, 23]. Plaintiff filed an amended complaint against Defendants on May 11, 2020 for violations of: (1) minimum wage compensation under the FLSA (Count I), (2) overtime compensation under the FLSA (Count II), (3) the Florida statutory employee retaliation law, Section 440.205, Fla. Stat. (Count III), and (4) 26 U.S.C. §7434 (Count IV). [D.E. 24]. On September 25, 2020, the Court affirmed and adopted the Undersigned's Report and Recommendation that granted Defendants' motion to dismiss Count III of the amended complaint and found the amended complaint failed to state a claim for enterprise coverage under the FLSA. [D.E. 35, 38].

## II. LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *See Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, a court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is

genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

Defendants, pursuant to Federal Rule of Civil Procedure 56, seek partial summary judgment in their favor on the issue of individual coverage as to Counts I and II arising under the FLSA. Defendants also move for summary judgment in their favor as to Count IV for the year 2017 because Plaintiff never received, nor did Defendants file an information return for Plaintiff for the year 2017. We can easily resolve the issue for Count IV because Plaintiff concedes that she never received a W-2 from Defendants in 2017. Accordingly, Defendants' partial motion for summary judgment as to Count IV for the year 2017 should be **GRANTED**. *See Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297-98 (S.D. Fla. 2014) (requiring a showing that a defendant issued an information return for a claim under Section 7434 to be viable). We next the address the remaining issue if Plaintiff is entitled to individual coverage under the FLSA.

The FLSA requires an employer to pay an employee "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. § 207(a). "In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis*, 662 F.3d at 1298. "This requires a showing that the jurisdictional prerequisite of 'interstate commerce' exists in a given case, a showing that may be

5

made one of two ways—enterprise coverage or individual coverage." *Dimingo v. Midnight Express, Inc.*, 2018 WL 770478, at *2 (S.D. Fla. Jan. 16, 2018).

An employee may claim individual coverage if she regularly and directly participates in the actual movement of things or persons in interstate commerce. *See Josendis*, 662 F.3d at 1298. Thus, an employee must show that she was "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in [her] work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Serv., Inc.*, 448 F.3d, 1264, 1266 (11th Cir. 2006) (citations omitted).

Here, with the burden on her to establish coverage, Jaramillo argues a substantial part of her work involved her (a) directly ordering goods from out of state; (b) receiving and handling interstate goods that continued on for use in other states through her sales to non-Florida tourists, and (c) regularly and recurrently using the instrumentalities of commerce. If any of Plaintiff's propositions are supported by evidence, and without a dispute regarding a genuine issue of material fact, she would establish individual coverage under the FLSA. We address her arguments in turn.

Jaramillo first argues that she directly engaged in interstate commerce by routinely ordering interstate goods that were to be resold at the kiosks. Specifically, she "would facilitate the placing of orders to be made by compiling models with their corresponding code numbers" for Mr. Druskin, who would then take the compiled

6

information and directly place the orders. [D.E. 51, pg. 5]. Therefore, according to Jaramillo's own argument, she never *directly* ordered the products but only helped in the preparation of the orders. Jaramillo fails to cite to any authority that has accepted an indirect participation theory for establishing individual coverage. While the language of the FLSA should be given a broad construction, expanding the requirement of "directly participating" to "helping to directly participate" could result in a never-ending rabbit hole inquiry of employees' indirect participation leading to another employee's eventual direct participation. This argument is thus unsound. *See Thorne*, 448 F.3d at 1266 ("[U]nder the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce . . . .").

Jaramillo next argues that she handled the interstate goods ordered by Defendants once they arrived and then sold the goods to non-Florida tourists who then used the goods or resold them interstate. To support this theory of individual coverage, Plaintiff contends she was trained to ask each customer where they were from before trying to sell them the goods. This was part of Defendants' sales strategy to best serve the shoppers needs. According to Jaramillo, most shoppers told her they were tourists from out of state or from a different country. Jaramillo also claims a few of these tourists wanted to buy sunglasses in bulk, so they could resale them for a small profit.

This argument fails because whether the goods were used or resold out of state is not supported by evidence. Jaramillo only speculates the goods were eventually used interstate because the customers were non-Florida residents. Without this

evidence, it is immaterial that most her customers were not from Florida and the goods she received were from out of state. *See Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012), *as amended* (July 17, 2012) (finding it immaterial whether customers were local or from out-of-state in establishing individual FLSA coverage); *Hayes v. Coco Dulce, Inc.*, 2019 WL 7371839, at *4 (S.D. Fla. Oct. 11, 2019) (rejecting theory that simply receiving interstate goods can establish individual coverage in a case involving an employee that just stocked shelves at a liquor store with goods received from out of state).

Jaramillo not only merely speculates in a conclusory fashion that her customers used the goods out of state, she contradicts her own speculation with more detail. In her deposition, she states: "[customers] would need sunglasses for the time being, if they left theirs in the hotel and they were going to the beach, it would be more convenient for them to just come by and buy some economic glasses, not something brand-named that would cost them 200 or $300[.]" [D.E. 56, Ex. 1]. While we cannot weigh evidence at this stage, Jaramillo admits the tourists bought the cheap sunglasses for short-term use while in Florida, not for use once they returned from their vacation. *See Villamil v. Star Fleet Servs., Inc.*, 2007 WL 9701107, at *4 (S.D. Fla. Nov. 27, 2007) (rejecting plaintiff's argument for individual coverage because no specific evidence was provided to show that tourists that rented cars then drove those cars out of state, and noting that it did not make sense for a person to fly to South Florida to rent a car and drive many hours north to get to another state).

For her speculation that tourists resold sunglasses out of state, she provides one example. A tourist wanted to buy around 20 pairs of sunglasses for $500 and then resale them when he got home. Jaramillo claims tourists were attracted to such a deal because sunglasses were 50% off after purchasing one pair. Jaramillo, however, does not remember when any such transaction occurred and does not know if the tourist ever resold the sunglasses outside of Florida. Moreover, Jaramillo argues that Defendants intentionally targeted out-of-state travelers that were looking to take the goods out of Florida. However, this assertion is not supported anywhere in the record. Jaramillo only claims that Defendants trained her to ask customers where they were from to better serve them. This does not equal evidence that Defendants intentionally ordered interstate goods for the purpose of having them end up interstate and used Jaramillo as a cog in this interstate circle.[2] This theory of individual coverage thus fails. *See Anderson*, 477 U.S. at 252 ("The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant.").

---

[2] The Court also notes that even if Jaramillo provided evidence to support this theory that the interstate goods she received were eventually used out of state, of individual coverage, the cases she cites does not support the existence of such a theory. *See Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*, 101 F. Supp. 3d 1282, 1287-88 (S.D. Fla. 2015) (finding individual coverage because an employee received interstate goods and then after the goods were rebuilt by the plaintiff, the rebuilt goods were directly sent to customers out of state for use, not to local customers who then took the rebuilt goods out of state for use).

9

Jaramillo's remaining arguments that she engaged in interstate commerce are that she: used the internet, processed credit cards from tourists, used interstate office supplies purchased from local stores, and traveled to Colorado for a multi-day sales conference. Each of these arguments easily fail.

Courts have repeatedly held that using a credit card or the internet is insufficient for establishing individual coverage under the FLSA. *See, e.g.*, *Amadon v. Delivery Dudes, LLC*, 2017 WL 7792707, at *3 (S.D. Fla. Mar. 3, 2017). Jaramillo provides no reason why this rule is not valid nor cites to any contradictory authority. The interstate supplies Jaramillo used were purchased from local big-box stores. Such purchase and subsequent use are not activities that render Plaintiff covered individually under the FLSA. *See, e.g., Thorne*, 448 F.3d at 1266 (rejecting argument of individual coverage when plaintiff purchased and used goods from a local Home Depot that received the goods from out of state).

Last, Jaramillo equates her one trip to Colorado as her regularly doing business with out-of-state customers for the purposes of interstate commerce. However, Plaintiff never claims she interacted with any customers while on this single short work trip. And the one case she cites to support this argument deals with an auto mechanic that never traveled for work. *See Mendoza*, 101 F. Supp. 3d 1282.

Accordingly, Defendants' motion for partial summary judgment on the issue of FLSA individual coverage as to Counts I and II should be **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, we **RECOMMEND** that Defendants' partial motion for summary judgment [D.E. 47] should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Judge Kathleen M. Williams. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Social Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 16th day of February, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge